**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Samir Aghar,

Petitioner,

v.

Eric Rokosky, Warden, Eloy Detention Center, et al.,

Respondents.

No. CV 26-03691 PHX KML (CDB)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE KRISSA M. LANHAM:**

Petitioner, who is represented by the Phoenix Federal Public Defender's Office, seeks relief from detention pursuant to 28 U.S.C. § 2241. The petition, filed May 27, 2026, is now fully briefed and ready for the Court's consideration.

## I. Background

Petitioner, born in 2007, is an ethnic Tajik and native of Afghanistan. (ECF No. 1 at 3). Petitioner asserts:

> 11. In October 2023, after his family was persecuted by the Taliban, Mr. Aghar's father sent him and his younger brother to the United States to seek asylum. They fled Afghanistan for Turkey and then for Mexico. In the early morning hours of October 28, 2023, a Border Patrol agent encountered Mr. Aghar and his brother approximately two miles west of the port of entry in San Ysidro, California, and approximately 100 yards north of the international border. He claimed a credible fear of persecution or torture if returned to Afghanistan. The Border Patrol agents issued a notice to appear and kept him in temporary custody pending placement with the Office of Refugee Resettlement.

12. The Border Patrol was required to "notify the Department of Health and Human Services within 48 hours upon the apprehension or discovery of an unaccompanied alien child." 8 U.S.C. § 1232(b)(2)(A). Border Patrol complied with this requirement for Mr. Aghar and his brother.

13. The Border Patrol was also required to transfer Mr. Aghar and his brother to HHS custody within 72 hours after determining that they were unaccompanied alien children. 8 U.S.C. § 1232(b)(3). Border Patrol complied with this requirement as well.

14. The Department of Health and Human Services was required to then "promptly place[]" Mr. Aghar and his brother "in the least restrictive setting that is in the[ir] best interest." 8 U.S.C. § 1232(c)(2)(A). …

15. Mr. Aghar and his brother were taken into the custody of the Office of Refugee Resettlement of the Department of Health and Human Services and placed in foster care for unaccompanied alien children.

16. On March 27, 2024, Mr. Aghar was served with a superseding notice to appear at the foster home where he was living in Surprise, Arizona. He was alleged to be removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he was a noncitizen who was present in the United States without being admitted or paroled after inspection. This document initiated removal proceedings pursuant to § 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a(a)(1) and 8 C.F.R. § 1239.1(a). …

17. On July 5, 2024, with the assistance of *pro bono* counsel from the Florence Immigrant & Refugee Rights Project, Mr. Aghar filed an application for asylum with U.S. Citizenship and Immigration Services. Because of this filing, on August 2, 2024, the removal proceedings initiated in March 2024 were administratively closed. Ultimately USCIS denied Mr. Aghar's application for asylum.

18. In April 2025, on the very day that Mr. Aghar turned 18 years old, ICE agents arrested him at the foster home in Tucson, Arizona, where he was living. They took him into immigration custody to be jailed while his asylum application was being processed. He is presently detained at the Eloy Detention Center in Eloy, Arizona.

19. On May 8, 2025, an immigration judge in Phoenix, Arizona, reopened the removal proceedings that had previously been closed. The judge also transferred the proceedings to the immigration court in Eloy, Arizona, where Mr. Aghar is being detained. The notice to appear issued in March 2024 was amended on July 10, 2025, to include a charge that Mr. Aghar was inadmissible (and is thus removable) under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he was not in possession of a valid entry document when he entered the United States.

20. On June 10, 2025, Mr. Aghar filed an asylum application with the Eloy Immigration Court. The court denied Mr. Aghar's application on January 21, 2026.

> 21. Mr. Aghar reserved appeal of the removal order and the denial of his asylum application. He did not do so. The removal order became final on February 20, 2026.
>
> 22. Afghanistan currently has no diplomatic presence in the United States.
>
> a. According to a notice published in the Federal Register, "Effective at 12:00 P.M. March 16, 2022, the Embassy of Afghanistan and Afghanistan's consular posts at Beverly Hills, CA and New York, NY formally ceased conducting diplomatic and consular activities in the United States. A protecting power or other agent charged with responsibility for the property of said missions has not been requested, nor approved by the Secretary of State." Determination Pursuant to the Foreign Missions Act, 87 Fed. Reg. 30323, 30323 (May 18, 2022).
>
> b. This notice has not been rescinded since it was issued.
>
> c. As such, it is currently impossible to obtain travel documents necessary to return Afghan citizens to Afghanistan if they are ordered removed to that country.
>
> d. It further does not appear that diplomatic relations between the government of the United States and the government of Afghanistan under the Taliban will resume in the foreseeable future.
>
> e. Consistent with this notice, multiple ICE agents have told Mr. Aghar that he cannot be deported to Afghanistan.
>
> 23. ICE has not expressed any intention to remove Mr. Aghar to any country other than Afghanistan.

(ECF No. 1 at 3-5).

## II. Claims for Relief

Petitioner contends his continued detention is illegal pursuant to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (ECF No. 1 at 6). Petitioner argues:

> *Zadvydas* interprets § 1231(a)(6) as imposing a presumption that detention for more than six months after a removal order becomes final indicates no significant likelihood of removal in the reasonably foreseeable future. 533 U.S. at 701; *see also Clark v. Martinez*, 543 U.S. 371, 384 (2005) (explaining that Zadvydas interpreted § 1231(a)(6) to "authorize detention only for a period consistent with the purpose of effectuating removal").

> "Within the six-month window, the detainee must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity." *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008). Mr. Aghar can meet this burden. There is no mechanism for him to obtain proper travel documents from the Afghan Embassy, because it is closed. The State Department advises against traveling to Afghanistan for any reason whatsoever: "U.S. citizens are at risk due to civil unrest, crime, terrorism, risk of wrongful detention, kidnapping, and limited health facilities."[1] "Further, Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan. More fundamentally, Petitioner posits that it is unlikely the Taliban is accepting return of Afghan nationals from the United States." *Ahmadzai v. Mullin*, No. 3:26-cv-2641-JAO, 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026). *And numerous ICE officials have told Mr. Aghar that he cannot be deported to Afghanistan. Mr. Aghar thus has shown "good reason to believe" his removal is not likely in the foreseeable future*. *See id.*
>
> With no evidence that ICE has either attempted to acquire travel documents for Mr. Aghar through any available diplomatic channels, or that they are trying to identify a third country for removal, the government cannot rebut Mr. Aghar's showing that his removal is not likely in the foreseeable future. His detention is thus illegal under 8 U.S.C. § 1231.

(ECF No. 1 at 7-8) (emphasis added and internal headers omitted).

In response to the Petition, Respondents asserts the six-month period of post-removal-order detention found by *Zadvydas* to be a reasonable time for a noncitizen to be detained pending their removal has not yet expired. Respondents further conted Petitoner's removal is likely in the reasonably foreseeable future. Respondents argue:

> … Petitioner has been detained under a final order for four months, eleven days, and remains in the presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 701. Although it appears Petitioner may bring an action prior to the end of the presumptively reasonable period, the

---

[1] Petitioner hyperlinks this statement to https://travel.state.gov/en/international-travel/travel-advisories/afghanistan.html, a travel advisory issued by the United States Department of State on February 20, 2026, advising United States citizens they should not travel to Afghanistan "for any reason," and urging United States citizens in Afghanistan to "leave immediately." The advisory makes clear that the Taliban is in control of Afghanistan and governmental operations in Afghanistan.

> burden is much higher to show that the detention is unreasonable. Even if held Petitioner for six months, Petitioner may only be granted release from detention if he can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

(ECF No. 13 at 3). Respondents contend Petitioner fails to meet his burden of showing his removal is not forseeable, citing cases where the burden was met because the noncitizen demonstrated "no country would agree to accept" them, or that the nonticitizen's "home country [had] no repatriation treaty with the United States …" (ECF No. 13 at 3). Respondents assert "Petitioner's removal is practically attainable, and his detention is not 'potentially indefinite,'" because "HQRIO [ICE's Headquarter Removal and International Operation Unit] continues to work with Petitioner's home country to obtain a transportation letter," citing the affidavit of a Deportation Officer ("DO"). (ECF No. 13 at 3-4 & ECF No. 13-5). Respondents argue that "based on the prior investigation that Petitioner may have had a Turkish passport, HQRIO has been asked to assist in the possibility of removing Petitioner to Turkey in the alternative." (ECF No. 13 at 4).

Attached to the Response to the Petition is the affidavit of a DO, who avers they are a "assigned to the Eloy Detention Center in Eloy, Arizona," and are "authorized to search records relating to detainees." (ECF No. 13-5). The DO avers their declaration is made "based on my personal knowledge, as well as my review of government databases and documentation relating to Mr. Aghar's file which contains electronic data including case records. The facts below were obtained by my review of this file." (*Id.*). The DO's affidavit notes the following actions have been taken to remove Petitioner from the United States:

> 4. On February 26, 2026, two days after the Petitioner's order of removal to Afghanistan was final,[2] officers met with the Petitioner in his housing unit for an initial interview to obtain information for a travel document request (TDR). On that same date, a TDR was submitted to the ICE Headquarter Removal and International Operation Unit (HQRIO) in Washington, D.C. for review.

[2] Petitioner's order of removal became final on February 20, 2026.

> 5. On March 17, 2026, HQRIO sent the TDR to the U.S. Mission Afghanistan in Doha, Qatar.[3]
> 6. On April 11, 2026, officers requested a travel update from HQRIO to effectuate removal.
> 7. On April 16, 2026, HQRIO advised officers it will take *numerous months* to receive a response on the TDR.
> 8. On May 14, 2026, *HQRIO advised officers that for the Petitioner to be removed back to his home country, a transportation letter, issued by the Taliban, is required.*
> 9. On June 29, 2026, assistance from HQRIO was requested to effectuate a third country removal to The Republic of Turkey.

(ECF No. 13-5 at 2-3) (emphasis added).

In reply to the Response, Petitioner's counsel notes "[t]he government [] submitted five exhibits with its answer," including:

> 4. A letter dated September 24, 2025, from the FBI Phoenix Joint Terrorism Task Force. (Dkt. #13-4) This letter is not signed, not sworn under penalty of perjury, and does not appear to have originated from any person with first-hand knowledge of the facts recited therein. The letter begins, "The FBI conducted screening and/or received information from other law enforcement agencies, and discovered potential derogatory information concerning the listed Individuals." (Dkt. #13-4 at 2)
> 5. A declaration from [] Berghouse, a deportation officer at the Eloy Detention Center, that is signed under penalty of perjury. (Dkt. #13-5 at 1 ¶ 2) [] Berghouse expressly says that the "facts below were obtained by my review" of "government databases and documentation relating to Mr. Aghar's file." (Dkt. #13-5 at 1 ¶ 2) She also says that her declaration "sets forth a true and correct summary of the steps taken to obtain travel documents available regarding this petitioner." (Dkt. #13-5 at 1 ¶ 3)

(ECF No. 14 at 3).

---

[3] Qatar maintains a formal agreement with the United States for the temporary hosting in Qatar of Afghan nationals at risk due to the situation in Afghanistan. This arrangement, which currently expires September 29, 2026, allows the U.S. to temporarily locate Afghan individuals in a "camp" in Qatar, prior to their relocation outside the country. *See* Civil Affairs, Agreement Extending the Agreement Between the United States of America and the State of Qatar on Cooperation in Temporary Hosting of Individuals at Risk Due to the Situation in Afghanistan, entered into force Sept. 28, 2025, Treaties & Other International Acts Series 25-928, U.S. Dep't of State, *available at* https://www.state.gov/wp-content/uploads/2026/05/64097-Qatar-Civil-Affairs.pdf.

Petitioner asserts:

> Insofar as the lawfulness of Mr. Aghar's detention is concerned, the letter from the FBI is intended to support Ms. Berghouse's statement that ICE is investigating whether to return Mr. Aghar to Turkey. (Dkt. #13 at 4) ("Additionally, based on the prior investigation that Petitioner may have had a Turkish passport, HQRIO has been asked to assist in the possibility of removing Petitioner to Turkey in the alternative."); *see also* Dkt. #13-4 at 2-3 (claiming, without evidence and contrary to Mr. Aghar's declaration, that Mr. Aghar and his brother traveled to Mexico on a Turkish passport); Dkt. #13-5 at 3 ¶ 9 ("On June 29, 2026, assistance from HQRIO was requested to effectuate a third country removal to The Republic of Turkey.")) The FBI letter also contains unsupported and highly inflammatory accusations that Mr. Aghar "attended Haqqani Madrassas (Islamic Schools) in Afghanistan," schools where "the teachings … are based on an extreme interpretation of Islam and many of the students go on to fight in Afghanistan, Pakistan, or Kashmir." (Dkt. #13-4 at 3) *It is unclear how these statements are relevant to the lawfulness of Mr. Aghar's present detention*. The government notes that the FBI letter played into the immigration judge's decision to deny Mr. Aghar's asylum claim, but does not explain how anything in the letter—assuming the information is true—affects the lawfulness of Mr. Aghar's detention.

(ECF No. 14 at 3-4) (emphasis added).

Petitioner argues:

> The government has not complied with the directive in the Court's order of June 1, 2026, respecting the evidence that must accompany any answer to the petition. Under 28 U.S.C. § 2243, when a court directs a habeas respondent to answer the petition, the respondent must "make a return certifying the true cause of the detention." The Court's June 1 order echoes this statutory directive.
>
> But the government did not heed it. The documentary evidence that the government produced—the notice to appear, the addendum to the notice to appear, and the written decision of the immigration judge—contribute only to one fact necessary to Mr. Aghar's *Zadvydas* claim. Those three documents establish only that Mr. Aghar was ordered removed on January 21, 2026. That fact does not even conclusively establish that Mr. Aghar's detention is authorized by 8 U.S.C. § 1231 at all, let alone by § 1231(a)(6).
>
> The remaining two documents—the FBI letter and the declaration of Deportation Officer Berghouse—should be discounted because they do not comply with the directive in the Court's June 1 order. The FBI letter does not even identify the author, let alone contain a declaration under penalty of

> perjury or explain how the anonymous author has any first-hand knowledge of the information in the letter. … the letter begins, "The FBI conducted screening and/or received information from other law enforcement agencies, and discovered potential derogatory information concerning the listed Individuals." (Dkt. #13-4 at 2) As for [] Berghouse's declaration, it makes plain that she does not have personal knowledge of any of the facts in it. She admitted that the declaration was a "summary" of her "review of the file." (Dkt. #13-5 at 1 ¶¶ 2, 3) …

(ECF No. 14 at 6).

Petitioner further argues "[t]here is absolutely no way to assess the probative value or prejudicial effect of the FBI letter, because it is completely anonymous. … The FBI letter and [] Berghouse's declaration do not amount to *any* competent evidence that satisfies § 2243." (ECF No. 14 at 6 (emphasis in original), *citing Mirzakhil v. Rokosky*, No. 2:26-cv-3491-PHX-AMM (D. Ariz. Jul. 1, 2026)).[4]

Petitioner contends:

> The record shows that Mr. Aghar has proved that there is no likelihood that he will be removed to Afghanistan in the foreseeable future. A number of deportation officers have told him that he cannot be deported to Afghanistan because ICE is not presently conducting removals to that country. Even the government admits that it would take "numerous months" to secure the documentation required to allow Mr. Aghar to be returned to Afghanistan. The government says that a "transportation letter"

---

[4] *Mirzakhil* involved a petitioner admitted to the United States as a refugee from Afghanistan in 2021. Relief was granted on the merits of a *Zadvydas* claim. With regard to the government's response to the petition, Judge Martinez stated:

> For decades, courts have required that at least some competent evidence must be provided in a response to satisfy § 2243. *See e.g.*, *Garcia v. Boldin*, 691 F.2d 1172, 1178-79 (5th Cir. 1982) (finding that response providing "a certified record of the administrative hearings which showed the true cause of detention and which substantially answered the factual allegations of the petition" to "substantially compl[y] with 28 U.S.C. § 2243"); *Marslin v. Schmucker*, [89 F.2d 765, 767] (4th Cir. 1937) …. A declaration providing only a summary of available facts allegedly contained in an undescribed file presented by a declarant lacking personal knowledge cannot be said to be sufficient to satisfy the requirements of § 2243, and is facially noncompliant with the Court's May 21, 2026 Order to Show Cause. Such a response is deficient as a matter of law, and the Petition can thus be granted on this basis alone. 28 U.S.C. §§ 2241(c)(1), 2243.

*Mirzakhil v. Rokosky*, 2:26-cv-03491-AMM, ECF No. 22 at 4.

> must be obtained from the Taliban government. But the government does not dispute Mr. Aghar's assertion (Dkt. #1 at 5 ¶ 22) that the United States government has no diplomatic relationship with Afghanistan and thus cannot obtain travel documents for him. The role of the U.S. Mission in Doha, Qatar, is entirely unclear; certainly Mr. Aghar had no way to know that an entity in Qatar, as opposed to some other Middle Eastern country, would be a substitute entity for obtaining documents from the Taliban government.

(ECF No. 14 at 8). Petitioner also asserts that if "Mr. Aghar's detention is meant to facilitate his removal to any country other than Afghanistan, it violates the Due Process Clause of the Fifth Amendment because he has not received notice of the country of proposed removal and a meaningful opportunity to contest removal to that country." (ECF No. 14 at 1, 9-10).

## III. Analysis

Petitioner argues that his detention is unlawful under *Zadvydas v. Davis* because his removal is not "reasonably foreseeable." In *Zadvydas* the Supreme Court held that a person who has entered the United States and is subject to a final order of removal cannot be held indefinitely under the discretionary authority of 8 U.S.C. § 1231(a)(6). *See* 533 U.S. at 682. The Supreme Court noted that § 1231(a)(2) mandates a 90-day period of detention after an order of removal becomes final. The Supreme Court also noted that after this 90-day period the government "may" detain the noncitizen or release them, pursuant to § 1231(a)(6). *Id.* at 683,

The *Zadvydas* Court read § 1231(a)(6) to implicitly limit a noncitizen's post-removal detention to "a period reasonably necessary to bring about that [noncitizen's] removal from the United States," and held that the statute did not permit "indefinite detention." *Id.* at 689. The Supreme Court established a presumption that after six months a noncitizen's detention is unauthorized by the statute if there is "no *significant likelihood* of removal in the *reasonably foreseeable* future." *Id.* at 701. The Supreme Court concluded that, after the six-month post-removal order period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* The *Zadvydas* Court tasked the federal district courts with determining "whether the detention in question exceeds a period reasonably necessary to secure removal." 533 U.S. at 699. The Supreme Court advised that "if removal is not reasonably foreseeable, the [federal district] court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

In a decision entered January 21, 2026, an IJ found Petitioner removable, denied his application for asylum, denied his application for relief from removal pursuant to the Convention Against Torture, and denied withholding of removal. (ECF No. 13-3). The IJ ordered Petitioner removed to Afghanistan. (ECF No. 13-3 at 9). Petitioner did not appeal this decision and the order of removal became final on February 20, 2026. Accordingly, the six-month period of detention found presumably reasonable under *Zadvydas*, which includes the 90-day period of mandatory detention, *see Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001), concludes August 20, 2026. As of July 23, 2026, Petitioner has been detained for five months since the order of removal became final, and 28 days short of the expiration of the presumptively reasonable period.

However, a *Zadvydas* claim is not categorically barred prior to the expiration of the presumptively reasonable six-month period of detention; numerous federal district courts have determined that *Zadvydas* provides only for a rebuttable presumption that, prior to expiration of the six-month post-removal-order period, the noncitizen's detention is reasonable. *See Serpas v. Simon*, ___ F. Supp. 3d ___, 2026 WL 1244544, at *4 (E.D. Va. Feb. 3, 2026); *Abramian v. Bondi*, 820 F. Supp. 3d 1050, 1057-58 (C.D. Cal. 2026); *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1159-60 (S.D. Cal. 2026) ("Multiple district courts have found that the six-month presumption is rebuttable"); *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092-93 (C.D. Cal. 2020); *Sweid v. Cantu*, No. 25-cv-03590, 2025 WL 3033655, at *3 (D. Ariz. Oct. 30, 2025); *Jiang v. Genalo*, No. 26-cv-2402, 2026 WL 1413915, at *4 (E.D.N.Y. May 20,

2026); *Huynh v. English*, No. 26-cv-300, 2026 WL 1074054, at *3 (N.D. Ind. Apr. 17, 2026) ("Perhaps the mere fact that Mr. Huynh remains within the presumptively reasonable period set by law would be enough for some to deny his petition outright, though one would need to wrestle first with the Supreme Court's conscious choice and repeated use of the word "presumption" throughout *Zadvydas* first."); *Vijdani v. Mattos*, No. 25-cv-02496, 2026 WL 560209, at *4 (D. Nev. Feb. 27, 2026); *Wana v. Bondi*, No. 25-cv-02321, 2025 WL 3628634, at *3 (W.D. Wash. Dec. 15, 2025); *Zavvar v. Scott*, No. 25-cv-2104, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025). "[T]he presumption scheme [set forth in *Zadvydas*] merely suggests that the burden the detainee must carry within the first six months of post[-]order detention is a heavier one than after six months has elapsed." *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008).[5]

Petitioner asserts a "number of deportation officers have told him that he cannot be deported to Afghanistan because ICE is not presently conducting removals to that country." (ECF No. 14 at 8). He notes the government has allowed that even if removal to Afghanistan is possible, it would take "numerous months" to secure the documentation required to remove Petitioner to Afghanistan. (*Id.*). Petitioner notes the government has conceded a "transportation letter" must be obtained from the Taliban government to allow for Petitioner's repatriation, but "the government does not dispute … that the United States government has no diplomatic relationship with Afghanistan and thus cannot obtain travel documents for him." (*Id.*).

---

> [5] Moreover, the [Supreme] Court's justification [in *Zadvydas*] for the first presumption—that detention for up to six months after the beginning of the removal period is lawful—rests explicitly upon the narrow ground that the Executive Branch, because of its knowledge and expertise, is in a better position than the courts in the early stages of the removal process to determine what is or is not reasonably foreseeable removal and what administrative steps are necessary to effect removal. [] Assuming the validity of such justification, it does not follow that all situations involving detention pursuant to § 1231(a)(6) implicate foreign policy and administrative expertise. Where the analysis drifts out of that realm, the justification for the presumption no longer applies.

*Cesar v. Achim*, 542 F. Supp. 2d 897, 903-04 (E.D. Wis. 2008).

Petitioner has met his burden of demonstrating there is no significant likelihood of removal in the reasonably foreseeable future. *See Agake v. Blanche*, No. 2:26-cv-01030, 2026 WL 1431091, at *4 (D. Nev. May 21, 2026) (holding the petitioner, who had been detained for five months beyond the 90-day removal period, had rebutted the *Zadvydas* presumption by alleging they were "unaware of specific plans to deport him" to Sudan or South Sudan, they had "yet to speak with either country's consulate," and there was "no evidence that South Sudan has accepted him nor is there evidence that either Sudan or South Sudan will issue him travel documents."); *Cf. Ahmadzai v. Mullin*, No. 26-cv-2641, 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026) (holding a petitioner challenging their continued detention shortly past the six-month period had met their burden by arguing the government would not be able to remove him to Afghanistan, noting: only one ICE agent had discussed the matter with the petitioner and given him "no indication" that the petitioner would be repatriated; the government does not recognize the Taliban, which was ruling Afghanistan, as the government of Afghanistan; and the petitioner asserted "it is unlikely the Taliban is accepting return of Afghan nationals from the United States."). In addition to Petitioner's allegations, the Court may take judicial notice of the numerous recent cases considering the removal of an Afghani national to Afghanistan at this time, wherein the federal district courts concluded the United States government has not been able to establish a likelihood of removal of an Afghani to Afghanistan in the reasonably foreseeable future. *See Mohmand v. Sage*, No. 26-cv-01155, 2026 WL 1859350, at *4 (M.D. Pa. June 29, 2026);[6] *Ahmadzai*, 2026 WL 1333753, at *2;[7] *Musharif v. Hernandez*,

---

[6] … the fact of the current diplomatic relationship between the United States and Afghanistan precludes Respondent from meeting their burden of establishing that Petitioner's removal is not significant likely in the reasonably foreseeable future.

The government presents no evidence that receiving travel documents from the Taliban-led government of Afghanistan is possible and removal is not reasonably foreseeable. *See Wazir*, 2026 WL 1122610, at *3. Accordingly, Mohmand's petition for habeas corpus is GRANTED. (Doc. 1).

*Mohmand v. Sage*, No. 26-cv-01155, 2026 WL 1859350, at *4 (M.D. Pa. June 29, 2026).

[7] Petitioner has been detained for just over six months since his November 10, 2025 order of removal and argues that Respondents will not be able to remove

No. 26-cv-1121, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026);[8] *Jalili v. Semaia*, No. 26-cv-1703, 2026 WL 1084739, at *3 (C.D. Cal. Apr. 16, 2026); *Vijdani v. Mattos*, No. 25-cv-02496, 2026 WL 560209, at *4 (D. Nev. Feb. 27, 2026). *See also Mirzakhil v. Rokosky*, 2:26-cv-03491-AMM (D. Ariz), ECF No. 22 at 4. ("There is no current system for removing Afghan nationals back to Afghanistan, given that the United States does not recognize the Taliban government.").

Respondents contend Petitioner fails to meet his burden of showing his removal is not forseeable, citing cases where the burden was met because the noncitizen demonstrated "no country would agree to accept" them, or that the nonticitizen's "home country [had] no repatriation treaty with the United States …" (ECF No. 13 at 3). Respondents assert "Petitioner's removal is practically attainable, and his detention is not 'potentially indefinite,'" because "HQRIO [ICE's Headquarter Removal and International Operation Unit] continues to work with Petitioner's home country to obtain a transportation letter," citing the affidavit of a Deportation Officer ("DO") assigned to

---

> him to Afghanistan because only one ICE agent has briefly discussed the matter with him and given him no indication that Afghanistan has accepted Petitioner for return. *See* ECF No. 1 at 3. Further, Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan. *See id.* at 4. More fundamentally, Petitioner posits that it is unlikely the Taliban is accepting return of Afghan nationals from the United States. *See … also Samir v. Wolf*, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026); *Yunsai v. Bondi*, 2026 WL 895627, at *2-3 (W.D. Tex. Mar. 30, 2026) …

*Ahmadzai v. Mullin*, No. 26-cv-2641, 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026).

[8] Further, Petitioner's evidence showing that ICE has not been able to effect Petitioner's removal to Afghanistan for reasons such as (1) Afghanistan is now a country governed by the Taliban, an organization the United States has designated as a Specially Designated Global Terrorist ("SDGT") entity, and the United States has no diplomatic ties with the Taliban, Dkt. 1 ¶ 21; and (2) data published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada, Dkt. 8 at 3, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

*Msharif v. Hernandez*, No. 26-cv-01121, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026).

the Eloy facility, who reviewed Petitioner's file. (ECF No. 13 at 3-4 & ECF No. 13-5). Respondents argue that "based on the prior investigation that Petitioner may have had a Turkish passport, HQRIO has been asked to assist in the possibility of removing Petitioner to Turkey in the alternative," citing the affidavit of the DO. (ECF No. 13 at 4).

Respondents' contentions do not address whether Petitioner's removal may be effected in the *reasonably foreseeable* future, but instead merely assert removal is "practically attainable," at some indefinite time in the future. The only designated country of removal is Afghanistan, and it is not plausible that Afghanistan will agree to accept Petitioner, *inter alia* because the United States does not have a repatriation treaty with Afghanistan. Furthermore, Respondents' contention that Petitioner's removal is reasonably foreseeable is not substantiated by their own factual allegations. In support of their argument that Petitioner's removal is reasonably foreseeable, Respondents assert that ICE officers met with Petitioner for an initial interview for a travel document request. A documents request was sent to ICE Headquarters Removal and International Operation Unit (HQRIO) for review; HQRIO sent the request to the U.S. Mission Afghanistan in Doha, Qatar; on April 11, 2026; ERO requested an update from HQRIO; on April 16, 2026, HQRIO indicated that "*it will likely take months to receive a response*;" on May 14, 2026, HQRIO advised that a transportation letter, *issued by the Taliban,* will be *required* to remove Petitioner to his home country; and on June 29, 2026, ERO requested assistance from HQRIO to effectuate a third country removal to Turkey. All of these statements actually bely Respondents' allegation that Petitioner's removal is significantly likely in the reasonably foreseeable future. And, notably, Respondents do not contest Petitioner's assertion that Afghanistan is not accepting return of its nationals.

Additionally, the Court may take judicial notice of the data cited by the Western District of Washington with regard to this issue:

> … data published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada, Dkt. 8 at 3, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

*Msharif*, 2026 WL 1256140, at *2.

Moreover, at this time Respondents have not actually designated any third country, such as Turkey, to which Petitioner might be removed. Any such designation will prolong removal, because Petitioner would be entitled to due process with regard to such designation and prior to removal to any designated third country. A noncitizen has a due process right to notice of any third country designation, and an affirmative opportunity for the noncitizen to express whether they fear persecution or harm in that country, before they may be removed to that country. *See Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *Mendoza Palacios v. Mullin*, ___ F. Supp. 3d ___, No. 26-cv-648, 2026 WL 933319, at *5 (D. Md. 2026); *Saadhom v. Bondi*, ___ F. Supp. 3d ___, 2026 WL 698786 (W.D. Wash. 2026); *Montes v. Mullin*, ___ F. Supp. ___, 2026 WL 1459723, at *5 (E.D. Va. 2026); *Le v. Bondi*, 824 F. Supp. 3d 1112, 1123 (W.D. Wash. 2026); *Pantoja v. Bondi*, 818 F. Supp. 3d 1227, 1234 (W.D. Wash. 2026); *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 114-15 (W.D. Wash. 2025); *Sagastizado Sanchez v. Noem*, 802 F. Supp. 3d 992, 1012 (S.D. Tex. 2025); *Ortiz Lopez v. Mattos*, No. 26-cv-01521, 2026 WL 1893642, at *2 (D. Nev. June 30, 2026) ("If the government attempts to remove [the noncitizen] to a different country after his removal order is final, it must first comply with the due process requirements of notice and a reasonable opportunity to be heard before a third country removal can be effectuated."); *D.J.R.R. v. Genalo*, No. 26-cv-3124, 2026 WL 1746716, at *8 (E.D.N.Y. June 17, 2026); *Perez Canet v. Blanche*, No. 26-cv-00223, 2026 WL 1091763 at *4 (D. Nev. Apr. 22, 2026) (collecting cases).

All of the facts presented to the Court, and facts of which the Court may take judicial notice, bely any conclusion that Petitioner's removal is likely in the reasonably foreseeable future. The record before the Court clearly indicates the government has not procured any travel documents for Petitioner allowing for his removal to Afghanistan. And as one federal district court recently noted, the "reality" of the United States' current ability to return any Afghani national to Afghanistan "runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime

controlling Afghanistan." *Wazir v. Attorney Gen. of U.S.*, No. 26-cv-526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026). The record in this matter, and the experience of this and other federal district courts in other cases, demonstrate that there is no reasonable likelihood that Petitioner can be removed to Afghanistan in the foreseeable future notwithstanding Respondents' bald statement that "there is no impediment to Petitioner's removal." (ECF No. 13 at 4).

Through no fault of Petitioner's, Respondent has been unable to, and is unlikely to be able to, secure the necessary travel documents to remove him to Afghanistan. The actions cited by Respondents demonstrate only Respondents' vague and preliminary efforts to obtain a travel document, and do not demonstrate that removal is likely. Pending requests for travel documents do not satisfy the government's "burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025). The "potential for a travel document at some point in the future is not sufficient to justify further detention" beyond the six month limit stated in *Zadvydas*. *Fermine v. Director of Immigr. & Customs Enf't*, No. 06-cv-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted).

In *Phan v. Warden of Otay Mesa Detention Facility*, the government argued it had rebutted the petitioner's showing that removal was not likely in the foreseeable future because it had prepared a travel document request, translated it completely, and submitted it to ICE headquarters. *See* 813 F. Supp. 3d 1179, 1186-87 (S.D. Cal. 2025). The court found the government failed to "proffer a substantive rebuttal" because the government "concede[d]" the document request had not been submitted to the target nation (Vietnam), and the government did not provide an estimate of when the document would be submitted to the target nation or how long it would take the target nation to respond. In *Lopez-Cacerez v. McAleenan* the court held that "[g]eneral indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is

unclear whether those efforts will be successful." No. 19-cv-1952, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (citation omitted). Similarly, in *Gilali v. Warden of McHenry County Jail*, the court concluded that although the "respondent asserts that [the petitioner's] travel document requests ... remain pending and ERO continues to follow up on the documents' status," this was insufficient to establish removal was foreseeable, but instead it was "merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future." No. 19-cv-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019). *See also Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1110 (W.D. Wash. 2025) (noting "[t]here is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all"); *Ahmadi v. Bondi*, No. 26-cv-00811, 2026 WL 1123514, at *2-3 (W.D. Wash. Apr. 24, 2026) (collecting cases where the federal district court rejected the government's reliance on "generalized assertions" to meet the *Zadvydas* requirement that removal was likely in the reasonably foreseeable future). Similarly, in this case Respondents fail to make an adequate showing regarding the likelihood of Petitioner's removal in the foreseeable future. *See Ahmadzai*, 2026 WL 1333753, at *2-3.

Finally, in four weeks the burden of establishing Petitioner's removal is significantly likely in the reasonably foreseeable future will fall on Respondents, and it is improbable that Respondents will be able to meet that burden. It is unlikely that some event will occur in the next several weeks to make the relationship between the United States and Afghanistan sufficiently amicable that Afghanistan will decide to repatriate its nationals. *See Samir v. Wolf*, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026); *Yunsai v. Bondi*, 2026 WL 895627, at *2-3 (W.D. Tex. Mar. 30, 2026); *Jalili*, 2026 WL 1084739, at *3; *Rahimi v. Semaia*, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026).

As noted *supra*, if a § 2241 petitioner's removal from the United States is not "reasonably foreseeable," the federal habeas court should find continued detention

unreasonable and not authorized by United States law and order the petitioner's immediate release. Accordingly,

**IT IS RECOMMENDED that** the Court **grant** the Petition at ECF No. 1, and order Petitioner be immediately released from confinement.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 22nd day of July, 2026.

Camille D. Bibles
United States Magistrate Judge